## Mathers, Appellant, *v.* Roxy Auto Company.

Argued November 10, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Edwin Fischer,* for appellant.

*Sylvan C. Balder,* with him *Stephen J. Korn* and *Blanc, Steinberg & Balder,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 4, 1954:

Plaintiff, David Mathers, brought suit in assumpsit against the defendant corporation, Roxy Auto Company, to recover damages for breach of an alleged oral agreement by the defendant to purchase liability insurance, which agreement plaintiff claims was entered into about two days prior to the execution of a writ-

ten bailment lease covering the purchase by plaintiff of an automobile. About three weeks after the execution of and during the term of the bailment lease, a pedestrian was struck and injured by the automobile while being operated by the plaintiff. The damages claimed by plaintiff in his action against the defendant were averred to have resulted by reason of defendant's alleged failure to procure such liability insurance in that the plaintiff would be compelled to pay whatever damages might be payable by him to the injured pedestrian and as well the expense of defending an action by the latter for the recovery of damages; other consequential damages were alleged.

To plaintiff's complaint defendant filed an answer denying the oral agreement and setting up as new matter the bailment lease which it claimed constituted the entire agreement between the parties. Plaintiff filed a reply admitting the execution of the bailment lease but again alleging the existence and efficacy of the oral agreement. The defendant moved for judgment on the pleadings, assigning as a reason therefor the invalidity of the alleged oral agreement under the parol evidence rule. The court granted the motion and plaintiff appeals from the judgment thereupon entered for the defendant.

Appellant does not contend that the question of applicability of the parol evidence rule can not be raised on a motion for judgment on the pleadings. Nor could he: See *O'Brien et al. v. O'Brien,* 362 Pa. 66, 66 A. 2d 309. His contention is that the oral agreement relied upon is without the parol evidence rule. The bailment lease, of standard form, with all of its provisions contained on one side of a sheet of paper, was attached to and made a part of defendant's answer. It disclosed that the plaintiff purchased from the defendant, a used car dealer, a second-hand Chrysler coupe

for the price of $956.50. Down payment of $445.50 was made at the time of purchase of which $206.50 was paid in cash and the remaining $239.00 was given as a credit for an automobile which plaintiff delivered in trade. In the right-hand column of the bailment lease there was the following provision: "The motor vehicle shall be at Lessee's risk. The holder as creditor of Lessee is authorized to purchase fire, theft and such other insurance in such form and amounts as the holder and Lessee may agree; Lessee hereby assigns to the holder any moneys not in excess of the unpaid balance hereunder which may become payable under such insurance, including return or unearned premiums, and directs any insurance company to make payment direct to the holder to be applied to said unpaid balance and appoints the holder as attorney in fact to indorse any draft. Unexpired premiums received by holder resulting from cancelation of insurance, originally placed at Lessee's expense, shall be credited to any matured unpaid installments.". Opposite this and a number of other provisions, on the left side of the lease, prominently set forth, was a schedule showing a breakdown of the cost of the automobile. Item No. 4 therein was as follows:

"4. Insurance Premium Costs                    $99.00
Description of Insurance Coverage: (check below)

- [X] Fire and Broad Form Theft
- [X] Comprehensive
- [X] $50 Deductible Collision
- [ ] Combined Additional Coverage
- [ ] Towing and Labor Costs (not exceeding $10.00 for any one disablement)
- [ ] Limited Personal Accident
- [ ] Creditor Group Life

Other Insurance (describe below)

. . . . . . . . . . . . . . . . . . . . . . . . . . .

Term of Insurance 18 months after date of
(Number of Months)
contract.

Amount or Extent of Insurance on Car: Actual
Cash Value. Loss payable to Lessor and his as-
signee as their interest may appear."

At the bottom of the lease it was provided, "No oral
agreement, representation or warranty shall be bind-
ing.".

As appears thereon, various kinds of insurance were
set forth in print with a place to the left of each for
designation of the exact insurance coverage. The par-
ties made such designation by the crosses placed in the
little boxes provided for this purpose. It is to be noted
that no "Other Insurance" was added in the place pro-
vided.

Appellant points to the language appearing at the
beginning of the provision of the contract first above
quoted: "The motor vehicle shall be at Lessee's risk.
The holder as creditor of Lessee is authorized to pur-
chase fire, theft and such other insurance in such form
and amounts as the holder and Lessee may agree; . . .".
The contract itself shows that such authorization was
specifically given for the purchase 'of fire and broad
form theft, comprehensive and $50 deductible collision
insurance, kinds of insurance which would primarily
enure to the protection and benefit of the lessor. Au-
thorization for the lessor to procure such insurance
was necessary because the premium cost was included
in the total purchase price of the automobile. The pre-
mium cost of $99.00 was typewritten in the blank
space provided therefor as was "$50" in the blank space
to indicate the particular kind of deductible collision
insurance to be obtained. The lessee knew when he
signed the contract the total premium cost and exactly
what it covered. He knew that liability insurance was

not included. By his execution of the agreement he assented to all of its provisions.

In the absence of any claim of fraud, accident or mistake, the parties having deliberately put their engagements in writing, such writing constituted the agreement between them and its terms can not be added to or subtracted from by parol evidence: *Gianni v. R. Russell & Co., Inc.*, 281 Pa. 320, 126 A. 791; *Speier v. Michelson*, 303 Pa. 66, 154 A. 127; *Jordan v. Sun Life Assurance Company of Canada*, 366 Pa. 495, 77 A. 2d 631; *Grubb v. Rockey*, 366 Pa. 592, 79 A. 2d 255.

Plaintiff cites in support of his position *Witt v. Crawford*, 173 Pa. Superior Ct. 98, 93 A. 2d 909, and *Calderoni v. Berger et al.*, 355 Pa. 418, 50 A. 2d 332. Both cases are clearly distinguishable. In *Witt v. Crawford* the purchaser of a used car signed a paper called a "used car order" upon which the defendant relied to invoke the parol evidence rule. The writing was not an agreement integrating all of the terms of the transaction. The Superior Court said in its opinion: ". . . One need only examine the 'used car order' to observe that it does not even purport to be a complete contract. Appellant incurred no legal obligation under it, for he made no promise to sell the car. This writing is, at most, a unilateral promise to purchase, unsupported by any consideration. In addition, the terms of the 'agreement' are uncertain, since the car is not fully identified and no time for delivery is specified. Potter v. Leitenberger Machine Co., 166 Pa. Superior Ct. 31, 70 A. 2d 390.".

In *Calderoni v. Berger*, the defendant moved in the lower court for judgment n.o.v. after three writings had been introduced into evidence: a sales agreement reciting that "fire, theft & 50.00 deductible Ins." would be provided; a bailment lease providing for "fire and theft" insurance, and a receipt signed by the defendant

which had typed on it "Includes property dam. & Liability also". Mr. Justice ALLEN M. STEARNE in affirming the lower court's refusal to grant judgment n.o.v. said: "From the record in this case, it is clear that the parties did not intend the written bailment lease to constitute the final and complete contract between them. The sales agreement was the document that evidenced the sale, and its terms; the lease was the document which protected the defendants, and their assignees, against nonpayment of the installments under the contract; the receipt executed by defendants evidenced the receipt of payments which plaintiff made and specified what plaintiff had received and was to receive; the parol agreement between the parties specified what insurance plaintiff was entitled to and had received under the writings. There was an interrelation between the writings and the parol testimony which required the action of the jury to determine what was the contract between the parties: [citing cases]".

In the present case there is only one written contract which clearly and unambiguously spells out the agreement between the parties. It is complete in its terms and defines the insurance to be provided with detailed particularity. Against this contract which, inter alia, states "No oral agreement, representation or warranty shall be binding.", plaintiff bases his entire case on an alleged oral promise on the part of defendant's sales manager which is directly contradictory of the subsequent written contract. The alleged oral promise or agreement can not obtain: *Gianni v. Russell* and other cases cited therewith, supra.

Judgment affirmed.