Rose, Appellant, *v.* Food Fair Stores, Inc.

Argued November 13, 1969. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused February 28, 1970.

Lester H. Novack, for appellant.

David N. Bressler, with him David V. Shapiro, for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 30, 1970:

In 1958 Food Fair Stores purchased all of Bernard Rose's interest in Best Markets,[1] a twenty-two store retail grocery concern, for some 23,500 shares of Food

_____
[1] Bernard Rose owned forty percent of Best's stock in his own right and was the trustee of a fund—his children were the beneficiaries—which owned another twenty percent. Bernard's father, Benjamin, owned the remaining forty percent, which was sold to Food Fair at the same time.

Fair common stock. These shares were not registered under the Securities Act of 1933[2] and their transfer to Rose was legal only if it did not constitute a "public offering."[3] With this in mind, Food Fair insisted that as part of the written agreement Rose sign and give them an "investment letter"—really a formal declaration that he was taking the stock for investment purposes only and had no present intention to resell or distribute the stock within the foreseeable future.

In 1966 Rose filed a complaint in which he contended that at the time of the sale Food Fair had orally promised to either register the securities or to otherwise render them transferable soon after the sale and that Food Fair's failure to do so had locked him into an extremely unprofitable investment and had caused him great financial harm. Food Fair denied the allegations and moved for summary judgment, arguing that the only allegations in Rose's complaint which could

---

[2] At the time of this transaction there were some 5,000,000 outstanding registered shares of Food Fair common stock.

[3] The Securities Act of 1933 regulates the public distribution of corporate securities and requires that before a corporation can offer its securities for public purchase it must register those shares with the Securities and Exchange Commission. In order to register an offering the corporation must make public certain information about its financial affairs, the bulk of which is prepared as a "prospectus" which must be sent to every purchaser of the securities. Of course, not all sales of corporate securities have the same potential effect on the public, and certain exemptions were written into the law. One of these is the "private offering" provision, which provides that "[t]he provision of Section 5 [requiring registration] shall not apply to . . . transactions by an issuer not involving any public offering." Securities Act of 1933, Section 4(1), 15 U.S.C. §77(d)(1). It is obvious that this exception could devour the rule if it were not carefully controlled, so a private distribution will not qualify for this exemption if the private purchaser takes the securities with a view to subsequent resale or distribution. It is this requirement which serves as the genesis of the "investment letter" concept.

produce a genuine issue as to a material fact were rendered incapable of proof by the parol evidence rule, and that the complaint thus stripped stated no cause of action. The trial court granted Food Fair's motion for summary judgment and Rose appealed. We affirm.

The applicability and effect of the parol evidence rule are properly considered in the context of a motion for summary judgment. See *Sokoloff v. Strick,* 404 Pa. 343, 172 A. 2d 302 (1961); *Mathers v. Roxy Auto Co.,* 375 Pa. 640, 101 A. 2d 680 (1954); *Bardwell v. The Willis Co.,* 375 Pa. 503, 100 A. 2d 102 (1953); *O'Brien v. O'Brien,* 362 Pa. 66, 66 A. 2d 309 (1949).[4] There is no logical reason for forcing the parties to go to trial when there could be no genuine issue as to a material fact, regardless of the reasons for the lack of such issues. Of course, if there are factual issues bearing on the applicability of the parol evidence rule or other genuine issues as to material facts, then the case ought properly proceed to trial.

The heart of Rose's complaint is that Food Fair orally represented to him that he would be free to sell the stock he was receiving in one or, at most, two years. Food Fair argues that, regardless of the accuracy of Rose's allegations, he is debarred from proving them by the parol evidence rule. If Food Fair's contention as to the applicability of the parol evidence rule is correct the case was properly disposed of on summary judgment since there were no other material factual controversies.

Briefly stated, the parol evidence rule seeks to preserve the integrity of written agreements by refusing to permit the contracting parties to attempt to alter

---

[4] The federal practice under F. R. Civ. P. 56 is similar. See *Gillis v. Miner's and Merchants Bank,* 271 F. 2d 163 (9th Cir. 1959); *Booth v. Barber Transp. Co.,* 256 F. 2d 927 (8th Cir. 1958); *Simpson Bros. v. Dist. of Columbia,* 179 F. 2d 430 (D.C. Cir. 1949), cert. denied, 338 U.S. 911, 70 S. Ct. 350 (1950).

the import of their contract through the use of contemporaneous oral declarations.[5] Although the rule is certainly more complex than this simple summation indicates, we need not consider its more sophisticated aspects because this case involves a classic example of its proper application.

The investment letter signed by Rose and given to Food Fair as part of the transaction is preclusive of Rose's ability to prove the alleged oral representations, since the alleged representations are fundamentally inconsistent with the language and meaning of the investment letter.[6] The statements made by Rose in the in-

---

[5] See, e.g., *Gianni v. Russell*, 281 Pa. 320, 126 Atl. 791 (1924).

[6] The relevant portions of the "investment letter" are these:

"This will confirm our representation to and agreement with you that the undersigned is fully familiar with the operation of the chain food market business and the position of Food Fair Stores, Inc., therein; that the Shares are being acquired by the undersigned in a transaction not involving a public offering and that all of the Shares are being acquired by the undersigned for investment only and not with a view to distribution or resale as such terms . . . are used in the Securities Act of 1933, as amended, and the rules, regulations and interpretations of the Securities and Exchange Commission promulgated thereunder.

"The undersigned further agrees not to make any disposition of any of the Shares which in any way . . . will render the transaction in which the Shares were today issued to the undersigned no longer an exempt transaction . . . and further agrees not to make any disposition without first either:

"(1) obtaining the opinion of your counsel, or of other counsel . . . satisfactory to your counsel, that the proposed distribution will not violate the foregoing agreement . . . or

"(2) obtaining a letter from the appropriate staff official of the Securities and Exchange Commission, at least to the effect that the Commission will not take any action adversely to Food Fair Stores, Inc. or the undersigned if the disposition is consummated as reported to the Commission.

"The undersigned hereby indemnifies, and agrees to hold Food Fair Stores, Inc., . . . harmless of and from all liability . . . imposed upon it . . . solely by reason of any disposition of the Shares

vestment letter constituted his formal declaration that he had no present intention to resell or distribute the stock and that he intended to hold the stock as a *long term* investment. Any understanding by Rose that he would enjoy an unrestricted ability to sell the stock within a relatively short period of time is inconsistent with his declarations in the investment letter. Further, had Rose's version of the transaction actually been set forth in the letter, Food Fair would have been subject to prosecution for violating the Securities Act of 1933. Because the alleged oral representations would directly contradict the clear meaning of the written contract we agree with the trial court that the parol evidence rule precludes proof of the oral representations and that the case was a proper one for summary judgment.[7] We further believe that summary

by the undersigned in such circumstances as to make the transaction in which the Shares were issued to the undersigned no longer a transaction exempt from the registration provisions of the Securities Act of 1933.

"The undersigned intends to be legally bound hereby.

"Very truly yours,
"(s) Bernard Rose     (SEAL)"
BERNARD ROSE

[7] Rose also presented a claim concerning one of Best's assets, the "Pantry Pride" label, which passed to Food Fair. Rose asserts that Food Fair was allowed to deduct the entire book value of the "Pantry Pride" label—some $34,000—from the purchase price on the strength of Food Fair's representation that the label was valueless to it and would not be used. Food Fair has since used and actively promoted this label. Unfortunately, the parol evidence rule again prevents proof of the alleged oral representations. If Food Fair asserted the worthlessness of the "Pantry Pride" label it was open to Rose to either keep the label or condition its sale on Food Fair's agreement not to use it. Having failed to adequately protect his interest in the contract negotiated at the time of the sale, he cannot now recover for a breach of the alleged oral representation.

judgment was entered in favor of the appropriate party and therefore affirm that judgment.

Mr. Justice COHEN and Mr. Justice POMEROY concur in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.