580 A.2d 860

**Richard J. MYERS and Theresa A. Myers, His wife, Appellants,**

**v.**

**Daniel E. McHENRY and Barbara J. McHenry, His wife, Robert J. Glunk, Bernard D. Rell, and Century 21 Rell Real Estate, Appellees.**

Superior Court of Pennsylvania.

Argued May 22, 1990.

Filed Sept. 26, 1990.

Frank S. Miceli, Lock Haven, for appellants.

William P. Carlucci, Williamsport, for McHenry, appellees.

Richard Vanderlin, Williamsport, for Glunk, appellee.

Before OLSZEWSKI, MONTEMURO and FORD ELLIOTT, JJ.

MONTEMURO, Judge:

Appellants Theresa and Richard Myers (Myerses) bring this appeal from a grant of summary judgment in favor of defendant-appellees Barbara and Daniel McHenry, Robert Glunk, Bernard Rell and Century 21 Rell Real Estate. The Myerses brought this action against appellees, alleging fraud and misrepresentation on the part of the defendants with respect to the Myerses' purchase of the McHenrys' home. Relying on the case of *LeDonne v. Kessler*, 256 Pa.Super. 280, 389 A.2d 1123 (1978), the trial court concluded that the parol evidence rule would bar testimony at trial regarding appellees' misrepresentations, and therefore granted summary judgment in favor of all of the defendants. Because we find that the trial court erroneously granted summary judgment in favor of the defendants, we reverse and remand the case for further proceedings.

We will uphold a grant of summary judgment only in those cases in which there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b). In reviewing a grant of summary judgment, we accept as true all well-pleaded facts in the non-moving party's pleadings and give the non-moving party the benefit of all reasonable inferences to be drawn therefrom. *Lookenbill v. Garrett*, 340 Pa.Super. 435, 490 A.2d 857 (1985).

The pleadings and depositions in this case establish the following facts. On August 18, 1984, the Myerses were taken by Robert Glunk, a sales agent for Century 21, to look at the McHenrys' home which was up for sale. During the inspection, there was no inquiry or discussion concerning the well or water flow rate. After spending about an hour looking over the property, the Myerses decided to make an offer to buy the premises.

As Mr. Myers was aware that the water to the property was supplied by a well, he wanted the well and septic system to be checked to make sure that the well was not going dry. On August 18, 1984, the same day that the Myerses looked at the McHenrys' home, Mr. Glunk drafted the agreement of sale. The agreement contained a special provision, special clause 5(D), which read:

Buyer will have water and septic approved at his cost.— to check for flow and purity. They must meet approved standard.

R.R. at 14a. The agreement also contained an integration clause which provided:

12. REPRESENTATIONS. It is understood that Buyer has inspected the property, or hereby waives the right to do so and he has agreed to purchase it as a result of such inspection and not because of or in reliance upon any representation made by the Seller or any other officer, partner, or employee of Seller, or by the agent of the Seller or any of the latter's salesmen and employees, or by a cooperating Broker, if any, or any of his salesmen and employees and that he has agreed to purchase it in its present condition unless otherwise specified herein. It is further understood that this agreement contains the whole agreement between the Seller and the Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this agreement shall not be altered, amended, changed or modified except in writing executed by the parties hereto.

The McHenrys accepted the Myerses' offer to buy the home, and the agreement of sale was executed. Four days later, on August 22, 1984, the Myerses returned to the McHenry home with Mr. Glunk for a second viewing of the property. During that visit, Mrs. McHenry explained that the well was a "slow recovery well." She assured the Myerses that "you could use it like a normal house, but you couldn't do five loads of wash and wash the vehicle and water the lawn in the same day and expect to have—expect the well to keep up because it's not—it's a well, it's not on city water." R.R. at 154a. The Myerses understood this to mean that they couldn't be wasteful with water. No further statements or disclosures were made with respect to the well's capacity.

In early September, 1984, Mr. Glunk informed the Myerses that the Veterans Administration, which was providing financing for the purchase of the property, required that the burden and cost of the water test be placed on the McHenrys as sellers of the property. The parties executed a substitute agreement of sale which changed special clause 5(D) by shifting the burden of testing the water flow rate and purity from the buyers to the sellers. All of the other provisions of the agreement were identical to the original agreement, including paragraph 12 regarding representations. Mr. Glunk later informed the Myerses that he was unaware of any method to test for water flow. On the basis of Mr. Glunk's representation that no water flow rate test was available, the Myerses never insisted upon enforcement of special clause 5(D) which required that the water flow test be performed by the sellers.

At closing, Mr. Rell, a broker with Century 21, requested that the Myerses sign the following agreement:

Richard J. Myers and Theresa A. Myers, his wife, acknowledge that, at the time of the inspection of the property situate at R.D. # 1, Box 145A, Nichols Run Road, Jersey Shore, Pa., in the presence of Robert Glunk, salesman for Century 21 Rell Real Estate, and in the presence of the owners of the property, Daniel D. McHen-

ry and Barbara J. McHenry, his wife, an explanation was made that the well was a slow recovery well. This explanation was also made at the time of final closing on the property, and the undersigned acknowledge that they are fully aware of this fact and still desire to purchase the property.

R.R. 45a. Although the Myerses did not really understand what a slow recovery well was, they informed their attorney that they had been told that the well was a slow recovery well and they signed the form.

After the closing, the Myerses moved into their new home and began cleaning the house. Within a few hours, the well ran dry. Despite their subsequent drilling of the well to increase the flow rate and storage capacity, the Myerses are unable to perform normal living activities, such as flushing the toilet after each use, using their washing machine and dishwasher, and taking a shower without having to turn the water on and off between soaping and rinsing.

The Myerses claim that Mrs. McHenry's statement that the well is a slow recovery well and her assurances that the well produced an adequate amount of water to perform all normal activities in the home were false and were intentionally made to deceive and defraud the Myerses, and induce the Myerses to proceed with the purchase of the house.

The Myerses also claim that Mr. Glunk, aware of the true condition of the well, misrepresented to them that the Veterans Administration required that the burden and cost of the water flow test, rather than just the cost of the test, be placed on the sellers, and thereby wrongfully induced them to enter into the second agreement of sale which placed responsibility on the McHenrys for checking the water flow and purity. The Myerses further argue that Mr. Glunk led them to believe that the requested water flow test could not be done, and therefore they did not insist that the sellers perform the test.

The Myerses contend that appellees knew that the representations were false, and made the statements with the

intent to fraudulently induce the Myerses to proceed with the purchase of the property. The Myerses allege that in purchasing the premises, they justifiably relied upon the false and fraudulent representations which the appellees made.

The trial court, reading the agreement of sale in conjunction with the form signed at closing in which the Myerses acknowledged that they were aware that the well was a slow recovery well, found that the parol evidence rule, as explained and applied in *LeDonne v. Kessler, supra,* would prevent the admission of the oral statements made by Mrs. McHenry and Mr. Glunk.

In *LeDonne,* the Court noted the following definition of the parol evidence rule:

Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence.

*LeDonne, supra* 256 Pa.Super. at 286–87, 389 A.2d at 1126–27, *quoting Bardwell v. The Willis Co.,* 375 Pa. 503, 506, 100 A.2d 102, 104 (1953) (footnote omitted).

The Myerses argue that the appellees' reliance on the parol evidence rule is misplaced, because the rule applies only to declarations made prior to or contemporaneously with the written agreement. In this case, the Myerses claim, the offending declarations were made after the initial agreement of sale, as Mrs. McHenry's statements were made four days after the first agreement of sale was signed, and Mr. Glunk informed them that a new agreement was necessary after the first agreement was signed. Mr. Glunk's statement regarding the ability to test the flow rate was made after the second agreement was signed, but

before the form was signed at closing. We agree with the trial court that the two agreements of sale and the written acknowledgement signed at closing together comprise the amended written agreement of the parties. Thus, the alleged misrepresentations were made either prior to or contemporaneously with the agreement, and the parol evidence rule has potential application in this case.

The trial court properly summarized the agreement of the parties as embodied in the relevant writings as follows:

The plaintiffs Myers agreed to buy and the defendants McHenry agreed to sell the parcel of real estate in question for the stated price; the buyers acknowledged that the sellers had given them notice that the well was a "slow recovery well"; the buyers had a right to insist that there be a testing of the well in order to determine the flow and quality of the water prior to closing with the cost of the testing being borne by the sellers; the buyers did not avail themselves of that right and decided to nevertheless go ahead with the closing.

Trial Court Opinion at 5–6. The issue is whether the Myerses, in proving their case of fraudulent inducement, can present parol evidence that Mrs. McHenry misled them as to the meaning of "slow recovery well" and that Mr. Glunk misled them as to the nonavailability of a water flow test, thereby inducing the Myerses to purchase the property without insisting on proof that the water flow rate meet approved standards.

■ Where buyers allege that they were fraudulently induced to purchase a property through fraud or misrepresentation, the applicability of the parol evidence rule is determined by balancing "the extent of the party's knowledge of objectionable conditions derived from a reasonable inspection against the extent of the coverage of the contract's integration clause in order to determine whether the party could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad integration clause." *LeDonne, supra* 256 Pa.Super. at 294, 389 A.2d at 1130.

■ Application of the *LeDonne* balancing test to the facts presently before us leads us to conclude that evidence of the fraudulent misrepresentations is not barred by the parol evidence rule. We disagree with the views of the trial court that the problems with the well's flow rate were readily ascertainable. Because the well is underground, the Myerses could not detect a flow rate or storage capacity problem through visual inspection alone. In this respect, the facts of this case fall squarely within *LeDonne,* where the Court found that the parol evidence rule did not bar admission of the sellers' misrepresentations concerning the subterranean septic system, because the buyers "could not have possessed full knowledge of its physical appearance and adequacy and could not have readily ascertained whether a drainage problem existed." *LeDonne, supra,* 256 Pa.Superior Ct. at 291–92, 389 A.2d at 1129. We must reject appellees' position that the fact that the defect was eventually discovered leads to the conclusion that the problem was readily apparent. If that were the test, then application of the *LeDonne* standard would result in the exclusion of parol evidence in every case.

In *Ward v. Serfas,* 387 Pa.Super. 425, 564 A.2d 251 (1989), this Court held that notwithstanding the inclusion of an integration clause in the agreement of sale, the parol evidence rule did not prevent proof of the sellers' concealment of a burnt floor, water damage and defects in the fireplace and misrepresentations regarding the sewage system.

In *Mancini v. Morrow,* 312 Pa.Super. 192, 458 A.2d 580 (1983), we interpreted an integration clause containing the identical language as the clause in the contract involved in this case "to deny only 'the existence of verbal representations as to the character or quality of land and building conditions reasonably apparent from an inspection of the premises.'" *Id.,* 312 Pa.Superior Ct. at 201, 458 A.2d at 584, *quoting LeDonne, supra* 256 Pa.Super. at 291, 389 A.2d at 1129. Where the sellers had concealed water damage in the basement and a bulge in the garage wall, we held

that evidence of fraud in the inducement of a contract to buy real estate was not barred by the parol evidence rule. *Mancini, supra* 312 Pa.Super. at 201, 458 A.2d at 584. *See also Glanski v. Ervine*, 269 Pa.Super. 182, 409 A.2d 425 (1979) (trial court did not err in admitting evidence of broker's misrepresentations about the soundness of house where termite damage was not reasonably apparent).

In accordance with our decision in *LeDonne* and its progeny, we hold that the parol evidence rule does not bar admission of the alleged misrepresentations concerning the flow and storage capacity of the well and the availability of a test to ascertain the well's flow rate. Thus, although the agreement contained a provision in which the buyers acknowledged their awareness that the well was a "slow recovery well," the Myerses may show that they were misled as to the meaning of "slow recovery well."

▪ Appellees Glunk, Bell and Century 21 Rell Real Estate argue that as a matter of law, the Myerses' reliance upon the misrepresentations was unjustified. The elements of fraud are: (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will act; (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damages to the recipient as the proximate result. *Woodward v. Dietrich*, 378 Pa.Super. 111, 124, 548 A.2d 301 (1988). Here, appellees contend that the Myerses unjustifiably relied upon the misrepresentations when they failed to have the well inspected and tested, failed to verify for themselves that there was no available test for the water flow, and failed to rescind the agreement of sale on the basis that the requested test was unavailable.

We cannot conclude that as a matter of law, the Myerses' reliance was unjustifiable. The question is one that should be decided by a jury on the basis of all of the facts and permissible inferences which may be drawn from the evidence presented at trial. *Neuman v. Corn Exchange Nat. Bank & Trust Co.*, 356 Pa. 442, 51 A.2d 759, 764 (1947); *Person v. C.R. Baxter Realty Co.*, 340 Pa.Super. 537, 490

A.2d 910 (1985) (where evidence of fraud and deceit by the sellers was sufficient to create a jury issue, trial court erred in taking the case from the jury and directing a verdict in favor of seller-defendants).

For the foregoing reasons, we hold that the trial court erred in granting summary judgment in favor of the defendant-appellees. We reverse this case and remand for proceedings consistent with this decision.

Reversed and remanded. Jurisdiction is relinquished.