## Wassel v. Heitzenrater

*Richard W. Kelly, Jr.*, for plaintiff.

*James P. Sommers, Gene G. Dimeo,* and *George F. Young, III* for defendant(s).

COX, *J.,* December 10, 2012—Before the court for disposition are the preliminary objections to complaint filed on behalf of the defendant PPR Realty, t/d/b/a Prudential Preferred Realty (hereinafter "defendant PPR Realty"), which argues that Count V of the plaintiffs' complaint fails to aver with sufficient specificity the deceptive acts or practices performed by defendant PPR Realty. In addition, defendant PPR Realty asserts that the plaintiffs' negligence claim in Count III is legally insufficient as paragraphs 13, 25 and 26 of the agreement of sale bars that type of recovery.

In March of 2005, the plaintiffs James J. Wassel and

Gail L. Wassel employed defendant PPR Realty and its employee Randy Householder as buyers' agent to aid them in purchasing a home. To solidify this relationship, the parties entered into a business relationship agreement. Defendant PPR Realty recommended that the plaintiffs view the interior and exterior of a residence at 1595 North Tower Road, Fombell, Pennsylvania. The plaintiffs viewed the property. On March 20, 2005, Eric M. Heitzenrater and Bonnie M. Heitzenrater (hereinafter "defendants Heitzenraters"), the individuals selling the property, completed a seller property disclosure statement that was provided to the plaintiffs pursuant to the Pennsylvania Real Estate Disclosure Act. The seller property disclosure statement informed the plaintiffs that there was water leakage in the basement, garage or crawl space and attempts to repair the issues were performed by Mathews Wall Repair by installing a French drain with a sump pump. That document also informed the plaintiffs that there was movement, shifting, deterioration or other problems with the walls, foundation or other structural components, which were repaired by Mathews Wall Repair. The seller property disclosure statement stated that the septic system leaked. After reviewing that statement, the plaintiffs offered to purchase the property from defendants Heitzenraters for the price of $137,000.00. At the same time, the plaintiffs discussed the septic system leaks with their mortgage lender, who informed them that the septic system would need to be repaired or replaced prior to receiving the mortgage. The plaintiffs informed defendants Heitzenraters, defendant PPR Realty and defendant Everest Consulting Group, L.P., t/d/b/a Northwood

Realty Services (hereinafter "defendant Northwood Realty")[1] that the septic system would have to be repaired or replaced before the transaction could proceed. In response, defendants Heitzenraters rejected the Plaintiffs' offer to purchase the property for $137,000.00 and made a counteroffer to the plaintiffs for the purchase price of $140,000.00 and they would repair the septic system. The plaintiffs agreed to that price and the parties entered into a standard agreement of the sale of real estate. On March 22, 2005, defendants Heitzenraters had repairs performed on the septic system. The plaintiffs took possession of the property on May 6, 2005, and defendants Heitzenraters provided the plaintiffs with a General Warranty Deed in return for the payment of $140,000.00. Additionally, defendants Heitzenraters, defendant PPR Realty and defendant Northwood Realty represented that the septic system was repaired and functioning fully.

Shortly after taking possession of the property, the plaintiffs noticed several defects, which included waste water draining into the basement after members of the household showered, rain water and grey water flowing into the basement and sinkholes developing near the new septic tank. In response, the plaintiffs had to regularly drain, dry, clean and sanitize the basement from rain water and sewage. Additionally, the sinkholes grew larger and deeper. The plaintiffs engaged an excavator to dig around the septic tank to determine the source of the problems and it was discovered that the new septic tank was connected to the old septic tank and the pipes between the two were

---

1. Northwood Realty through its agent, Gina Coast, was acting as the seller's agent for defendants Heitzenraters.

leaking. Moreover, the old septic tank's inlet and outlet pipes were cracked and deteriorated, the baffles inside the old septic tank had broken off and the old septic tank was cracked. The plaintiffs also noticed that certain grey water flowed through a pipe that bypassed the septic system and ran underneath the road. That pipe caused the grey water to be discharged on a neighbor's property.

As a result, the plaintiffs filed suit against defendant PPR Realty, defendants Heitzenraters and defendant Northwood Realty. In Counts III and V of the complaint, the plaintiffs assert claims of negligence and unfair trade practices against defendant PPR Realty, who responded by filing these preliminary objections. The complaint avers that defendant PPR Realty was negligent in failing to advise the plaintiffs to retain their own sewer and septic expert and failing to advise the plaintiffs to have the septic and drainage system inspected. The plaintiffs also allege that defendant PPR Realty performed deceptive acts in violation of 73 P.S. §201-2(4)(xxi) by failing to disclose matters concerning water penetration, the defective septic system, the failure to properly repair the septic system and the discharge of grey water onto the neighbor's property. Defendant PPR Realty contends the plaintiffs' complaint fails to aver with sufficient specificity the deceptive acts or practices performed by defendant PPR Realty and the plaintiffs' negligence claim in Count III is legally insufficient as paragraphs 13, 25 and 26 of the agreement between the parties bar that type of recovery.

The specificity of a pleading is governed by Pa.R.C.P. No. 1019, which states, "(a) The material facts on which a cause of action or defense is based shall be stated in

a concise and summary form." Pennsylvania is a fact-pleading jurisdiction, which requires the plaintiff to provide the defendant with notice of what the plaintiff's claim is and the grounds for the claim. *Unified Sportsmen of Pennsylvania v. Pennsylvania Game Com'n (PGC)*, 950 A.2d 1120, 1134 (Pa. Cmwlth. 2008) (quoting *Sevin v. Kelshaw*, 417 Pa. Super. 1, 611 A.2d 1232, 1235 (1992)). Additionally, the plaintiff must summarize the facts essential to support the claims. *Id.* "The rule requires a plaintiff to plead all the facts that he must prove in order to achieve recovery on the alleged cause of action. The pleading must be sufficiently specific so that the defending party will know how to prepare his defense." *Commonwealth ex rel. Pappert v. TAP Pharmaceuticals Products, Inc.*, 868 A.2d 624, 635 (Pa. Cmwlth. 2005) (citing *Department of Transportation v. Shipley Humble Oil Co.*, 29 Pa. Cmwlth. 171 370 A.2d 438 (1977)). The purpose behind the rules of pleading is to enable parties to ascertain, by utilizing their own professional discretion, the claims and defenses that are asserted in the case. *Krajsa v. Keypunch, Inc.*, 424 Pa. Super. 230, 236, 622 A.2d 355, 357 (1993). "The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense, and they must be sufficient to convince the court that the averments are not merely subterfuge." *In re Estate of Schofield*, 505 Pa. 95, 477 A.2d 473 (1984) (citing *Sokoloff v. Strick*, 404 Pa. 343, 172 A.2d 302 (1961); *Homsby v. Lohmeyer*, 364 Pa. 271, 72 A.2d 294 (1950); *Rice v. Braden*, 243 Pa. 141, 89 A. 877 (1914)).

In other words, the court must examine "whether the

plaintiff's complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *Id.* The court must also read all of the averments of the complaint and consider the nature of the case to determine if the complaint lacks specificity. *Hock v. L.B. Smith, Inc.*, 69 Pa. D. & C. 2d 420, 423 (Pa. Com. Pl. Columbia 1974) (citing *Roberts v. Peoples Cab Co.*, 7 Pa. D. & C. 2d 632 (Pa. Com. Pl. Allegheny (1955)). "It is enough that, considering the complaint as a whole, it contains sufficient material facts to show the existence of a cause of action." *Id.* "In determining whether a particular paragraph in a complaint is stated with the necessary specificity, such paragraph must be read in context with all the allegations in the complaint. Only then can a court determine whether the defendant is put on adequate notice of the claim against which it must defend." *Unified Sportsmen of Pennsylvania v. Pennsylvania Game Com'n (PGC)*, 950 A.2d 1120, 1134-1135 (Pa. Cmwlth. 2008) (citing *Yacoub v. Lehigh Valley Med. Assocs.*, 805 A.2d 579 (Pa. Super. 2002)).

Plaintiffs allege a violation of 73 P.S. §201-2(4)(xxi). That statute, otherwise known as the catchall provision of the Unfair Trade Practices And Consumer Protection Law (hereinafter "UTPCPL"), defines an unfair trade practice as "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." To set forth a cause of action under 73 P.S. §201-2(4)(xxi), the plaintiffs must prove the elements of common law fraud. *Booze v. Allstate Ins. Co.*, 750 A.2d 877 (Pa. Super. 2000). The plaintiffs must prove the following

elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Skurnowicz v. Lucci*, 798 A.2d 788 (Pa. Super. 2002) (citing *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555 (1999)). The UTPCPL is to be liberally construed to effectuate its objective of protecting consumers from unfair business practices. *Commonwealth by Creamer v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974). However, allegations of fraud must be averred with particularity. Pa.R.C.P. No. 1019(b). In order to aver fraud with sufficient particularity, the following two conditions must be met: "(1) the pleadings must adequately explain the nature of the claim to the opposing party so as to permit the preparation of a defense, and (2) they must be sufficient to convince the court that the averments are not merely subterfuge." *Martin v. Lancaster Battery Co., Inc.*, 530 Pa. 11, 18, 606 A.2d 444, 448 (1992) (citing *Bata v. Central-Penn National Bank*, 423 Pa. 373, 380, 224A.2d 174, 179(1996)).

In the current case, the plaintiffs' claim for a violation of the UTPCPL lacks the requisite level of specificity as required by Pa.R.C.P. No. 1019. Although, the plaintiffs have presented several averments alleging the elements of fraud, there are no specific allegations concerning the acts of each defendant, In paragraph 87 of the complaint, the plaintiffs aver that defendants Heitzenraters, defendant PPR Realty and defendant Northwood Realty knowingly

failed to disclose the defective condition of the septic system, the inadequate repairs and the discharging of grey water on the neighbors' property. However, there are no specific allegations concerning defendant PPR Realty's knowledge of the defective condition prior to closing or whether it knew that the repairs were not done properly. The plaintiffs have not attributed any specific acts to defendant PPR Realty in their complaint. They merely state that all three defendants performed acts that were deceptive. There is no explanation as to defendant PPR Realty's knowledge of the defective conditions of the property or how defendant PPR Realty became aware of the improper repairs to the septic tank. The plaintiffs have merely averred the elements of fraud in general terms and failed to plead any specific fraudulent or deceptive acts performed by defendant PPR Realty as required by Pa.R.C.P. No. 1019(b). Therefore, the plaintiffs have failed to set forth a claim pursuant to the UTPCPL with sufficient specificity and Count V of the complaint is dismissed without prejudice regarding defendant PPR Realty.

Next, defendant PPR Realty claims that paragraphs 13, 25 and 26 of the standard agreement of the sale of real estate bar recovery for the claim of negligence in Count III. Paragraph 13 of that agreement provided the plaintiffs with the option, at their expense, to have a professional inspection of the septic system within 15 days of the execution of that agreement. Paragraph 25 explains that the plaintiffs released from liability all brokers, their licensees, employees and officers of a firm or corporation who may be liable to them for any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water

service system. Also in paragraph 26, the plaintiffs agreed that they inspected the property or waived the right to do so and agreed to purchase the property in its condition at that time. Further, the plaintiffs acknowledged that the brokers did not make an independent examination of the property, including a mechanical inspection of any of the systems contained on the property. Defendant PPR Realty contends that the language of those paragraphs bars recovery for negligence; however, the plaintiffs claim that the parol evidence rule concerning integration clauses in contracts for the sale of real estate permits parol evidence of negligent inducement for conditions that are not readily apparent to the purchasers.

Negligent misrepresentation "applies only to those businesses which provide services and/or information that they know will be relied upon by third parties in their business endeavors, and it includes a foreseeability requirement." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 479, 866 A.2d 270, 286 (2005). In *Bilt-Rite*, 581 Pa. at 479, 866 A.2d at 286, the court noted that Pennsylvania law has adopted the restatement (second) of torts §552, which states: "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." A plaintiff must prove the following to establish a claim for negligent

misrepresentation: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 556 Pa. 489, 500, 729 A.2d 555, 561 (1999) (citing *Gibbs v. Ernst*, 538 Pa, 193, 210, 647 A.2d 882, 890 (1994)). The difference between negligent misrepresentation and intentional misrepresentation is that the speaker does not need to know his or her words are untrue, but merely failed to make a reasonable investigation into the truth of his or her words to be held liable for negligent misrepresentation. *Id.*

In Pennsylvania, the admissibility of parol evidence is barred when the parties have deliberately placed their agreement in writing, unless there is evidence of fraud or mistake. *Gianni v. Russell & Co.*, 281 Pa. 320, 323, 126 A. 791, 792 (1924). The purpose of the parol evidence rule is to maintain the integrity of written contracts by refusing to permit the contracting parties to alter their contract with contemporaneous oral declarations. *LeDonne v. Kessler*, 256 Pa. Super. 280, 286, 389 A.2d 1123, 1126 (1978) (quoting *Rose v. Food Fair Store, Inc.*, 437 Pa. 117, 120-121, 262 A.2d 851, 853 (1970)). In determining whether the parol evidence rule applies to oral representations contemporaneous with a contract for the sale of real estate that contains an integration clause, the court must:

[B]alance the extent of the party's knowledge of objectionable conditions derived from a reasonable inspection against the extent of the coverage of the

contract's integration clause in order to determine whether that party could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad integration clause. *Id.*, 256 Pa. Super. at 294, 389 A.2d at 1130.

The parol evidence rule may be rendered inoperable where the seller in a real estate contract makes oral representations that induce the buyer to enter into the contract. *Id.*, 256 Pa. Super. at 291, 389 A.2d at 1129. In *LeDonne*, the court ruled that the parol evidence rule barred evidence of oral representations regarding water leakage problems with the residence's sundeck and cellar because those conditions could have been discovered upon an inspection of the premises, but did not bar evidence concerning the septic system as that could not be discovered by inspection of the premises. *Id.*, 256 Pa. Super. at 298, 389 A.2d at 1132.

This issue was also addressed in *Myers v. McHenry*, 398 Pa. Super. 100, 580 A.2d 860 (1990). In that case, the appellants were taken to view the sellers' residence by a real estate agent. During their inspection, there was no discussion regarding the water flow rate and the appellants decided to make an offer to buy the house. The appellants were aware at that time that the water was supplied by a well and they wanted the well and septic tank to be tested ensuring the well was not going dry. At the same time, a contract was drafted containing a clause that the appellants would have the water and septic system approved at their expense. The contract also stated that the appellants inspected the property or waived their right to do so and agreed to purchase the property based upon their

inspection and did not rely on other representations. The sellers accepted the appellants' offer and the agreement of sale was executed. The appellants made a second visit to the residence and were informed that the well was a "slow recovery well," but were assured by the sellers that they could use it like a normal house, except they could not do five loads of laundry and expect the well to keep up with that pace. Subsequently, the veterans' administration, who was providing financing for the transaction, required that the sellers bear the burden and cost of the water test. A substitute agreement of sale was executed by the parties. However, one of the sellers informed the appellants that he was unaware of a test for water flow and the appellants relied upon that representation. After closing, the appellants moved into the residence and began cleaning the house, but, within a few hours, the well ran dry. The appellants attempted additional drilling to increase flow rate and storage capacity, but they were still unable to perform normal living activities like flushing the toilet after each use, using the washing machine and taking a shower without having to turn the water on and off between soaping and rinsing. It must be noted, at the closing, the appellants signed an agreement which stated that they were aware that it was a slow recovery well; however, they did not understand the exact meaning of a slow recovery well. The appellants filed suit asserting claims of fraud and misrepresentation on behalf of the sellers. The trial court granted the sellers' motion for summary judgment, citing to *LeDonne*, reasoning that the parol evidence rule would bar testimony regarding the sellers' misrepresentations. The appellants filed an

appeal and the Superior Court of Pennsylvania reversed and remanded the case for further proceedings.

The *Myers* court noted that the alleged misrepresentations were made prior to or contemporaneously with the agreement. *Id.*, 398 Pa. Super. at 107, 580 A.2d at 863. The court reiterated that it must balance the extent of the party's knowledge of the objectionable condition derived from reasonable inspection against the coverage of the contract's integration clause. *Id.*, 398 Pa. Super. at 107, 580 A.2d at 864 (citing *LeDonne*, supra.). The *Myers* court reasoned, "We disagree with the views of the trial court that the problems with the well's flow rate were readily ascertainable. Because the well is underground, the [appellants] could not detect a flow rate or storage capacity problem through visual inspection alone." *Id.*, 398 Pa. Super. at 108, 580 A.2d at 864. Hence, the court held that, even though the contract contained a clause in which the appellants acknowledged that it was a "slow recovery well", the limitations of the well were not readily ascertainable and the appellants were permitted to provide the court with parol evidence regarding the misrepresentations of the sellers. *Id.*, 398 Pa.Super. at 109, 580 A.2d at 865.

In the case sub judice, the plaintiffs were informed by the seller property disclosure statement that there was water leakage in the basement, garage or crawl space; movement, shifting, deterioration or other problems with the walls, foundation or other structural components; and the septic system leaked. The plaintiffs' mortgage lender required the septic system to be repaired before the transaction could proceed. The price of the residence

was increased from $137,000.00 to $140,000.00 and it was represented to the Plaintiffs that the septic system was repaired. Upon moving into the residence, the plaintiffs noticed several defects, which included waste water draining into the basement after members of the household showered, rain water and grey water flowing into the basement and sinkholes developing near the new septic tank. The plaintiffs had to routinely drain, dry, clean and sanitize the basement from rain water and sewage. In addition, grey water would leak onto a neighbors' property through a pipe which ran from the plaintiffs' house onto their property. The plaintiffs employed an excavator to investigate the sinkholes and discovered that the new septic tank was connected to the old septic tank and the pipes between the two were leaking. The old septic tank's inlet and outlet pipes were cracked and deteriorated, the baffles inside the old septic tank had broken off and the old septic tank was cracked.

Those defects were not readily ascertainable by the plaintiffs prior to moving into the residence as they involve the septic system, which is located underground. These issues were known to the plaintiffs through the seller property disclosure statement, but it was later represented by defendants Heitzenraters that the septic system was repaired. It must be noted that the standard agreement of the sale of real estate contains clauses limiting defendant PPR Realty's liability. However, in accordance with *LeDonne* and *Myers*, integration clauses cannot be utilized to shield a seller of real estate from liability for defective conditions that are not readily ascertainable from routine inspection. Clearly, the defective condition of the septic

system could not be ascertained by merely inspecting the property as it would require excavating around the septic tanks to inspect the condition of that system. Thus, the plaintiffs are not barred by the parol evidence rule from presenting evidence of any alleged misrepresentations regarding the condition of the septic tanks that induced them into purchasing the residence.

For the reasons set forth in this opinion, the court sustains defendant PPR Realty's first preliminary objection and Count V of the complaint is dismissed without prejudice. In addition, defendant PPR Realty's second preliminary objection is overruled as there are sufficient allegations in the complaint to aver a claim for negligent misrepresentation regarding the condition of the septic tank.

## ORDER OF COURT

Now this December 10, 2012, this case being before the court on October 29, 2012, for oral argument on the preliminary objections to complaint filed by the defendants PPR Realty, t/d/b/a Prudential Preferred Realty, with the plaintiffs James J. Wassel and Gail L. Wassel, husband and wife, appearing through counsel, Richard W. Kelly, Jr., esquire and the defendant PPR Realty, t/d/b/a Prudential Preferred Realty, appearing through counsel, James P. Sommers, esquire and after consideration of the arguments and briefs presented and submitted by counsel and a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

1. In accordance with the attached opinion, the

preliminary objection to Count V of the plaintiffs' complaint in the nature of lack of specificity as to the deceptive acts or practices performed by the defendant PPR Realty t/d/b/a Prudential Preferred Realty is hereby sustained.

2. Count V of plaintiffs' complaint as it relates to defendant PPR Realty, t/d/b/a Prudential Preferred Realty is hereby dismissed, without prejudice.

3. In accordance with the attached opinion, the preliminary objection in the nature of legal insufficiency to Count III of plaintiffs' complaint is hereby overruled.

4. Plaintiffs may file an amended complaint as to Count V within thirty (30) days after notice of this order of court.

5. The prothonotary is directed to serve a copy of this order of court upon counsel of record.