J-S50014-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: B.M.J.P. A/K/A B.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.P., BIOLOGICAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 466 WDA 2019 |

Appeal from the Order Entered August 14, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000021-2018

| | | |
|---|---|---|
| IN RE: B.M.J.P. A/K/A B.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: ALLEGHENY COUNTY | : | |
| OFFICE OF CHILDREN, YOUTH AND | : | |
| FAMILIES (CYF) | : | |
| | : | |
| | : | |
| | : | No. 515 WDA 2019 |

Appeal from the Order Entered March 13, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000021-2018

BEFORE:    LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                    FILED SEPTEMBER 27, 2019

L.P. (Mother) appeals nunc pro tunc from the trial court's August 14,

2018 order involuntarily terminating her parental rights to her minor son,

B.M.J.P. (Child) (born 10/14), and Allegheny County Office of Children, Youth

_____

[*] Retired Senior Judge assigned to the Superior Court.

and Families (CYF) cross-appeals[1] from the trial court's order granting Mother's petition for permission to appeal nunc pro tunc. After careful review, we affirm.

In March 2016, CYF received a report that there had been a domestic dispute between Mother and Child's maternal grandmother,[2] with whom Mother and Child lived. As a result of the dispute, Mother moved out of maternal grandmother's house and was homeless for a period of time. CYF obtained emergency custody of Child on August 10, 2016. Child was adjudicated dependent on October 19, 2016, and was placed to live with his paternal aunt. Child continues to reside with paternal aunt, an adoptive resource; Child's half-sister, A.W, also lives with him at their paternal aunt's home.

Child was diagnosed with autism spectrum disorder. Mother suffers from depression, anxiety and mood disorder. Mother has suffered from mental health issues since her adolescent years, having been admitted to several psychiatric hospitals as a teenager.[3] CYF developed a family service

_____

[1] On April 29, 2019, our Court sua sponte consolidated Mother's appeal at 466 WDA 2019 and CYF's cross-appeal at 515 WDA 2019.

[2] In April 2016, the court entered a protection from abuse (PFA) order against Mother as it related to maternal grandmother. N.T. Termination Hearing, 8/10/18, at 12. Moreover, two temporary PFA orders were entered between Mother and the father of Child's half-sister, in March 2003 and December 2005. Id. at 43.

[3] Mother has been receiving Social Security disability benefits for a number of years due to her mental health problems.

plan (FSP) for Mother with the goal of reunification. Mother's plan consisted of attending family therapy, obtaining suitable housing, and attending court-ordered mental health treatment. Mother was initially granted unsupervised visitation with Child; however, in May 2017, Mother's visits changed to supervised and occurred once a week for 2 to 4 hours. Mother's visits were supervised because she had trouble managing Child's "head banging and tantrums" and because CYF noticed a negative change in Child's behavior after he visited alone with Mother. Mother received in-home services, parenting therapy, and child-parent interaction therapy, all arranged by CYF. Mother's attendance at therapy was inconsistent. However, she visited Child consistently.

On January 19, 2018, CYF filed a petition to terminate Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), and (8). On August 9, 2018, Heather Kelly, Esquire, entered her appearance for Mother in the matter.[4] On August 10, 2018, the trial court held a termination hearing,[5] at which a CYF

_____

[4] On April 20, 2018, the court granted Jeffrey K. Eisenberg, Esquire's motion to withdraw his appearance as parent advocate for Mother. Eisenberg, who was affiliated with the Juvenile Court Project, entered his appearance for Mother in this matter on February 6, 2018.

[5] On April 11, 2018, the court appointed conflicts counsel to represent Child's legal interests in the contested termination matter. See 23 Pa.C.S. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and In re K.R., 200 A.3d 969 (Pa. Super. 2018) (en banc), but see In Re: T.S., E.S., 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between

caseworker, Dr. Neil Rosenblum, a court-appointed psychological evaluator for Orphans' Court/dependency matters (via telephone), paternal aunt, a parenting coach, and two individuals who transported Child to supervised visits with Mother testified. On August 14, 2018, the trial court entered an order involuntarily terminating Mother's parental rights to Child pursuant to sections 2511(a)(2), (5), (8)[6] and (b) of the Adoption Act.[7]

On September 25, 2018, Mother filed a pro se Pa.R.A.P. 1925(b)(1) concise statement of errors complained of on appeal. On October 31, 2018, CYF filed a motion to strike Mother's Rule 1925(b)(1) statement. On November 2, 2018, the trial court ordered Mother's Rule 1925(b)(1) statement be stricken because "no [n]otice of [a]ppeal filed by Birth Mother appear[ed] on the record." Order, 11/2/18. The order acknowledged that "a notice of appeal must be filed within thirty days of the date of entry of that order." Pa.R.A.P. 903(a). Id. Accordingly, the court found that "Mother's failure to do so result[ed] in waiver of her right to appeal." Id.

_____

a child's legal and best interests, an attorney-guardian ad litem representing the child's best interests can also represent the child's legal interests.").

[6] Because CYF chose to seek termination under sections 2511(a)(1), (2), & (8), and the trial court ordered termination under sections 2511(a)(2), (5), & (8), we will confine our review to those subsections that overlap, sections 2511(a)(2) & (8).

[7] 23 Pa.C.S. §§ 2101-2938.

Almost three months later, on January 29, 2019, Mother filed a petition for permission to file a notice of appeal nunc pro tunc in the trial court. The court held a hearing on Mother's petition on February 28, 2019. On March 13, 2019, the court entered an order granting Mother's petition and ordering her to "file a Notice of Appeal and a Concise Statement of Errors Complained of on Appeal within thirty (30) days from the date of the entry of th[e o]rder." Order, 3/8/19. The order also directed Mother's counsel, Heather Kelly, Esquire, to withdraw her appearance and new counsel enter his appearance for Mother.

Mother filed her nunc pro tunc Rule 1925(b)(1) and notice of appeal on April 1, 2019. On April 10, 2019, CYF filed its notice of cross-appeal. Mother raises the following issues for our consideration:

(1)   Whether the trial court abused its discretion and/or erred as a matter of law in concluding that termination of biological Mother's parental rights would serve the needs and welfare of the Child pursuant to 23 Pa.C.S. § 2511([a])[](2)?

(2)   Whether the trial court abused its discretion and/or erred as a matter of law in concluding that termination of biological Mother's parental rights would serve the needs and welfare of the Child pursuant to 23 Pa.C.S. § 2511([a])[](5)?

(3)   Whether the trial court abused its discretion and/or erred as a matter of law in concluding that termination of biological Mother's parental rights would serve the needs and welfare of the Child pursuant to 23 Pa.C.S. § 2511([a])[](8)?

(4)   Whether the trial court abused its discretion and/or erred as a matter of law in concluding that termination of biological Mother's parental rights would serve the needs and welfare of the Child pursuant to 23 Pa.C.S. § 2511([b])?

Appellant's Brief, at 5. On cross-appeal, CYF raises the following issue for our review: "Did the Orphans' Court err as a matter of law and/or abuse its discretion in permitting [] Mother to file a late appeal nunc pro tunc?" Cross-Appellant's Brief, at 5.

Because CYF's issue involves a procedural matter that could potentially implicate the waiver doctrine as it relates to Mother's claims, we will address its issue first.

CYF contends on cross-appeal that the trial court improperly granted Mother's petition to appeal nunc pro tunc where she did not allege or prove that the delay in filing her notice of appeal was the result of fraud or a breakdown in the court system.

In In re Adoption of W.R., 823 A.2d 1013 (Pa. Super. 2003), our Court recognized that:

> [a]llowance of an appeal nunc pro tunc lies at the sound discretion of the trial judge. More is required before such an appeal will be permitted than the mere hardship imposed upon the appellant if the request is denied. As a general matter, a trial court may grant an appeal nunc pro tunc when a delay in filing an appeal is caused by extraordinary circumstances involving fraud or some breakdown in the court's operation through a default of its officers. Where an appeal is not timely because of non-negligent circumstances, as they relate to either the appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal nunc pro tunc. The circumstances occasioning the failure to file an appeal must not stem from counsel's negligence or from a failure to anticipate foreseeable circumstances.

Id. at 1015 (emphasis added).

Pennsylvania Rule of Appellate Procedure 1925(b)(1) requires a concise statement of errors complained of on appeal be filed with the notice of appeal in Children's Fast Track appeals.[8]  See Pa.R.A.P. 1925(b)(1) (effective March 16, 2009); see also Pa.R.A.P. 102 (appeal from any order involving termination of parental rights designated as Children's Fast Track appeal). Instantly, the trial court's termination order was filed on August 14, 2018. Mother testified that she knew an appeal had to be filed within 30 days of that date, or by September 13, 2018, in order to be considered timely.  Mother's attorney told her she was unable to file the appeal in Orphans' Court and that Mother would have to file it on her own.  On September 14, 2018, Mother testified that she "typed up a notice of appeal," went to the Family Division of the Allegheny County Orphans' Court[9] and was told by an employee at the front desk to take the notice of appeal "up to the fifth floor to . . . Judge [Woodruff's] chambers."  N.T. Hearing, 2/28/19, at 19.  Mother complied and handed the notice to the judge's secretary, and told her to "please take it to

_____

[8] We note that Pa.R.A.P. 905(a)(4) states that "[i]f a notice of appeal is mistakenly filed in an appellate court, or is otherwise filed in an incorrect office within the unified judicial system, the clerk shall immediately stamp it with the date of receipt and transmit it to the clerk of the court which entered the order appealed from, and upon payment of an additional filing fee the notice of appeal shall be deemed filed in the trial court on the date originally filed." However, we do not deem a trial judge's chambers to be "an office within the unified judicial system" for purposes of Rule 905.

[9] Mother first attempted to file the notice of appeal in our Court and was told that she had to file it in the Family Division of the Orphans' court, located across the street from the Superior Court.  N.T. Hearing, 2/28/19, at 21-22.

the proper place and to [sic] where it needs to go." Id. at 9, 21. This appeal was never in fact filed with the trial court. Mother, however, did file a concise statement of errors complained of on appeal on September 25, 2018, albeit 11 days late.

On November 2, 2018, CYF filed a motion to strike Mother's concise statement. Judge Woodruff granted the motion, struck the statement, and found that Mother's failure to file a timely notice of appeal resulted in waiver of that right. However, after Mother filed a petition to reinstate her appellate rights, the court held a hearing and granted her relief.

In his Rule 1925(a) opinion, Judge Woodruff supports his decision to grant Mother nunc pro tunc relief, noting:

> This [c]ourt concludes Mother made a good faith effort to file a notice of appeal, and in fact believed that she had properly done so when she presented the notice of appeal to a member of this [c]ourt's staff. Thus[,] Mother took no further steps to preserve her appellate rights.
>
> On September 26, 2018, Mother filed a concise statement of errors complained of on appeal, still believing that her notice of appeal had been properly filed, and[,] thus[,] took no further steps to ensure that her appellate rights were preserved. On October 31, 2018, CYF filed a motion to strike Mother's concise statement of errors complained of on appeal which this [c]ourt granted on November 2, 2018, thus alerting Mother to the fact that her notice of appeal had not been properly filed. Mother then sought and retained new counsel in November [] 2018[,] who filed a petition to have her appellate rights reinstated.
>
>           \*     \*     \*
>
> Here, Mother made a good faith attempt to file her notice of appeal on September 14, 2018, one day after the expiration of the thirty-day appeal period, and in fact believed that her appeal had been

- 8 -

successfully filed and that her appellate rights were preserved. Under the particular circumstances of this case, this [c]ourt concludes that Mother is entitled to reinstatement of her appellate rights nunc pro tunc.

Trial Court Opinion, 4/26/19, at 5-6, 8.

Instantly, it is undisputed that Mother waited almost three months to file a petition for permission to appeal nunc pro tunc after the trial court informed her that her notice of appeal was not timely filed and that her "failure to do so result[ed] in waiver of her right to appeal." Order, 11/2/18. However, despite her rather significant delay in filing the notice of appeal, we conclude that Mother was entitled to the reinstatement of her appeal rights nunc pro tunc where counsel essentially abandoned Mother.

It is well-established indigent parents are entitled to counsel in involuntary termination proceedings. See In re Adoption of T.M.F., 573 A.2d 1035, 1039 (Pa. Super. 1990). See also 23 Pa.C.S. § 2313(a.1) ("The court shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, upon petition of the parent, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship."). In In re Adoption of R.I., 312 A.2d 601 (Pa. 1973), our Supreme Court recognized that "[a]n individual is entitled to counsel at any proceeding, which may lead to the deprivation of substantial rights," such as a parent's concern for the liberty, care and control of his or her child. Id. at 602. Moreover, in In re V.E., 611 A.2d 1267 (Pa. Super. 1992), our Court held that "counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her

parental rights, may . . . petition . . . for leave to withdraw from representation if he or she can find no issues of arguable merit on which to base the appeal." Id. at 1275. In reaching its holding, our Court noted that an indigent parent who is faced with the permanent loss of his or her child "is entitled to be represented by an advocate, an attorney who will support the appeal to the best of his or her ability." Id. (emphasis in original and added).

Accordingly, while we agree with the trial court's conclusion that Mother was entitled to nunc pro tunc appellate relief, we do so on a different basis. See Blumenstock v. Gibson, 811 A.2d 1029, 1033 (Pa. Super. 2002) (our Court is not limited by trial court's rationale and may affirm its decision on any basis). Fundamentally, Mother was entitled to counsel throughout the filing of her direct appeal and contemporaneous Rule 1925(b)(1) statement. Here, counsel not only told Mother that she was unable to file an appeal on her behalf, but she essentially abandoned her throughout the entire appellate process. In fact, at the time the court held the hearing on Mother's petition for permission to file a nunc pro tunc appeal, termination counsel, Attorney Kelly was still counsel of record; however, Mother's current appellate counsel, Anthony P. Piccirilli, Jr., Esquire, was the only individual present to represent her at the hearing. As we acknowledged in In re V.E., Mother was "entitled to be represented by an advocate . . . who will support [her] appeal" or, in the alternative, seek leave to withdraw. Thus, we conclude that under the particular circumstances of this case, Mother was entitled to reinstatement of

her appellate rights nunc pro tunc and the appointment of new counsel to represent her on appeal once former counsel properly withdrew from the case.

We now turn to the substantive issues presented by Mother on appeal, namely, whether termination of Mother's parental rights was proper under sections 2511(a) and (b) of the Adoption Act. Mother contends that the court erred in terminating her parental rights to Child where she had made "great strides" with regard to her parenting skills, including her ability to address Child's special needs. Appellant's Brief, at 24. In addition, Mother claims that her court-ordered supervised visitation with Child was too limited in duration (a maximum of three or four hours once a week) which, in turn, reduced her ability to effectively use the services provided to her by CYF. Finally, Mother contends that termination did not serve Child's needs and welfare where she and Child have a strong parent-child bond.

Despite the undeniable efforts Mother has made by availing herself of the reunification services provided by CYF, we find that termination is proper under section 2511(a)(8).[10] In order to terminate parental rights under section 2511(a)(8), CYF, as the petitioner, must show: (1) that Child has been removed from the care of Mother for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of Child still exist; and (3) that termination of parental rights would best serve the needs

_____

[10] We can affirm the trial court's decision regarding the termination of parental rights with regard to any single subsection of section 2511(a). In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

and welfare of Child. See 23 Pa.C.S.A. § 2511(a)(8). Notably, termination under section 2511(a)(8) does not require an evaluation of Mother's willingness or ability to remedy the conditions that led to placement of Child. In re J.T. and R.T., 817 A.2d 505, 509 (Pa. Super. 2003).

Mother's depression, anxiety and domestic violence issues, the main reasons for Child's placement, continue to exist and significantly affect her capacity to parent. Mother's mental health problems are chronic and prevent her from acknowledging Child's behavioral and emotional deficits. Child requires a high level of consistency in care due to his developmental delays and autism. N.T. Termination Hearing, 8/10/18, at 99 (Doctor Rosenblum testifies that Child "requires a lot of stability, a lot of consistency in the environment, and of course, certainly requires someone who can consistently and reliably work and support his progress in school with his developmental therapies and with his behavior therapies."). While Mother has made noticeable progress over the past two years by cooperating with in-home services, obtaining housing, visiting Child regularly, and interacting positively with him during visits, Mother's mental health issues remain a constant concern. CYF caseworker Sally Fink testified that Mother's mental health concerns not only interfere with her ability to parent, but also impede her ability to maintain relationships with her family and hinder her ability to manage or handle Child's behavioral issues. N.T. Termination Hearing, 8/10/18, at 17; id. at 99 (testimony from behavioral psychologist that Child "needs somebody who can consistently attend developmental conferences,

school conferences, behavior conferences [and] who can keep his routines on a day-to-day basis very predictable[.]").

At the time of the termination hearing, Mother was no longer receiving mental health treatment as CYF recommended in her FSP, and was inconsistent in taking her psychotropic medications. Child also had services and medical treatment delays due to Mother's nonfeasance. Id. at 27. Caseworker Fink testified that CYF believes termination is necessary because Mother "is not able and capable of maintaining . . . care for [Child] long term" and also believes that termination would serve Child's needs and welfare where foster mother is meeting Child's educational, developmental and psychological needs. Id. at 29, 41.

Doctor Rosenblum, who performed three psychological evaluations[11] of Mother, testified that Mother is in denial of Child's significant developmental impairments because of her own mental health issues which, in turn, contribute to her inability to effectively parent. Id. at 108. Although Dr. Rosenblum testified that Mother undeniably loves her son, cares about him, and has a beneficial parent-child relationship with Child, the doctor also testified that Child's relationship with his foster mother, who is also his paternal aunt, is more "necessary and beneficial" than his relationship with Mother. Id. at 115. See In re I.J., 972 A.2d 5 (Pa. Super. 2009) (strength of bond between child and potential adoptive parent important consideration

_____

[11] The evaluations were performed in September 2016, October 2017, and March 2018.

in section 2511(b) analysis). Doctor Rosenblum also testified that Child has more of a "familiarity" with Mother than an actual bond as he is incapable of "performing meaningful attachments to other people." Id. at 124. Essentially, Dr. Rosenblum indicated that he could not recommend Mother be Child's primary caretaker due to Child's significant developmental needs. Id. at 122.

Because Child has been in placement for over two years, which amounts to half of his life, the conditions that led to his placement continue to exist, and termination of Mother's parental rights would serve Child's needs and welfare, we affirm the trial court's order terminating Mother's parental rights under section 2511(a)(8). We also find that termination is proper under section 2511(b) where terminating Mother and Child's bond would not cause irreparable harm or extreme emotional consequences to Child and where Child is bonded with his paternal aunt, a prospective adoptive parent, who meets his safety, educational, medical, developmental and behavioral needs.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2019