J-S53033-19

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| WYATT AKER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QUABEER SAUNDERS AND | : | No. 426 EDA 2019 |
| SUPERIOR COMFORT COMPANY | : | |
| SUPERIOR COMFORT HEATING AND | : | |
| COOLING, LLC AND SUPERIOR | : | |
| COMFORT PRODUCTS AND | : | |
| COMITALE NATIONAL | : | |
| DISTRIBUTORS, LLC A/K/A AND | : | |
| D/B/A SUPERIOR COMFORT | : | |
| PRODUCTS AND SUPERIOR | : | |
| COMFORT LLC AND SUPERIOR | : | |
| COMFORT LIMITED LIABILITY | : | |
| COMPANY | | |

Appeal from the Order Entered December 31, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  February Term 2018 01019

BEFORE:  OLSON, J., STABILE, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED NOVEMBER 04, 2019**

Appellant Wyatt Aker appeals from the order granting the motion to enforce settlement agreement filed by Appellees Quabeer Saunders and Superior Comfort Company, Superior Comfort Heating and Cooling, LLC, and Superior Comfort Products and Comitale National Distributors, LLC a/k/a and d/b/a Superior Comfort Products and Superior Comfort LLC and Superior Comfort Limited Liability Company.  Appellant argues that (1) the settlement and release were defective; (2) he rescinded the release one day after its

execution; (3) the trial court should have conducted an evidentiary hearing to develop the record; (4) Appellees failed to comply with Pa.R.C.P. 1030; and (5) Appellees' insurance carrier failed to satisfy its obligation of fair dealing. We affirm.

The relevant facts and procedural history of this appeal are as follows.

This matter arises from a car accident Appellant was allegedly injured in on February 13, 2016. On December 9, 2016, Appellant settled with Appellee[s]. Appellant signed a release in exchange for $12,855.00. [Specifically, the release discharged Appellees Superior Comfort and Quabeer Saunders and their associates from all claims related to the motor vehicle accident.] Appellant's [prior] attorney faxed a letter to Appellee[s'] insurance company, with the signed release of liability attached, and asked the insurance company to forward her a check for the settlement amount. The next day, December 10, 2016, Appellant's [prior] attorney contacted the insurance company by telephone and advised that Appellant wished to rescind the release. [In response, Appellees' insurance company stopped payment on the check. New counsel] filed a writ of summons [on Appellant's behalf] on February 13, 2018. Appellant then filed a complaint on August 15, 2018. Appellee filed a motion to enforce settlement agreement on November 15, 2018. [On December 5, 2018, Appellant filed a response in opposition to Appellees' motion. The trial] court entered an order granting Appellee[s'] motion on December 31, 2018.

On January 28, 2019, Appellant filed a notice of appeal from [the trial] court's December 31, 2018 order. On January [30], 2019, [the trial] court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days. Appellant filed a timely [Rule 1925(b) statement] on February 19, 2019.

Trial Ct. Op., 4/15/19, at 1-2 (some capitalization omitted).

The trial court filed a responsive opinion on April 15, 2019. The trial court concluded that (1) the issuance of settlement funds to Appellant's

attorney as his fiduciary did not render the settlement defective; (2) Pennsylvania law does not require that the execution of a release be witnessed or notarized to be enforceable; (3) although Appellant purported to rescind his assent to the release, there was no fraud or other circumstances warranting rescission; (4) Rule 1030 did not apply to Appellees' motion to enforce settlement; (5) an evidentiary hearing was not necessary to determine whether the settlement agreement was binding under the circumstances of this case; and (6) Appellant failed to substantiate his claim that Appellees' insurance carrier failed in its obligation of fair dealing.

Appellant now raises six issues for our review, which we have reordered as follows:

1. The court erred or abused its discretion [in] not finding that the settlement was defective because [Appellees'] insurer's settlement check was made payable to [Appellant's] prior attorney only and not to [Appellant] and his attorney.

2. The court erred or abused its discretion in not finding that the Release was defective.

3. The court erred or abused its discretion in not finding that the Release was rescinded and said rescission was ratified by [Appellees'] insurance company.

4. The court erred or abused its discretion by not holding an evidentiary hearing.

5. The court erred or abused its discretion in not finding [Appellees] failed to plead an Answer or New Matter containing the affirmative defense of "Release."

6. The court erred or abused its discretion in not finding [Appellees'] insurance carrier failed in its obligation of fair dealing with [Appellant].

Appellant's Brief at 5-6.[1]

In support of his first two issues, Appellant claims that various defects invalidated the settlement agreement. *Id.* at 12-13. Specifically, Appellant alleges that Appellees' insurance carrier made the settlement check payable to Appellant's prior attorney without including Appellant's name on the check. *Id.* at 12. Appellant argues that a settlement check "must be made out to both plaintiff and his counsel," and the settlement check here "was void on its face." *Id.*

Appellant also asserts that the release "included signature lines for two witnesses and a notary." *Id.* at 13. Appellant insists, however, that no one actually witnessed the execution or notarization of the release, because the signature lines for the witnesses are blank. *Id.* Appellant cites *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999), for the proposition that, generally, "signatures are not required unless such signing is expressly required by law or by the intent of the parties." *Id.* (emphasis omitted). In light of these omissions, Appellant concludes that the trial court erred in not finding that the release was defective. *Id.*

---

[1] Although Appellant's statement of the questions involved presents six issues for our review, Appellant's argument section is divided into two parts. *See* Pa.R.A.P. 2119(a) (stating that the argument shall be divided into as many parts as there are questions to be argued). Appellant acknowledges this discrepancy, claiming that "[s]ince the issues are intertwined, it is difficult to segregate the issues." Appellant's Brief at 12. Nevertheless, we will address each of the six claims independently.

"The enforceability of settlement agreements is determined according to principles of contract law.  Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." ***Step Plan Servs., Inc. v. Koresko***, 12 A.3d 401, 408 (Pa. Super. 2010) (citation omitted).

> Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision.  With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

***Id.*** (citations and quotation marks omitted).

"There is a strong judicial policy in favor of voluntarily settling lawsuits. The primary reason that settlement is favored is that it expedites the transfer of money into the hands of a complainant.  Further, settlement reduces the burden on and expense of maintaining courts." ***Felix v. Giuseppe Kitchens & Baths, Inc.***, 848 A.2d 943, 946 (Pa. Super. 2004) (citations omitted).

In a settlement agreement, "[t]here is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)." ***Step Plan Servs.***, 12 A.3d at 409 (citation omitted).  "As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the agreement." ***Mazzella v. Koken***, 739 A.2d 531, 536 (Pa. 1999) (citation and internal alterations omitted).

"It is well settled that the fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement." *Hornberger v. Dave Gutelius Excavating, Inc.*, 176 A.3d 939, 944 (Pa. Super. 2017) (citations and internal alterations omitted). "If parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date." *Compu Forms Control, Inc. v. Altus Grp., Inc.*, 574 A.2d 618, 622 (Pa. Super. 1990) (internal quotation marks and citations omitted); *see also Step Plan Servs.*, 12 A.3d at 409 (stating that "[w]here a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement" (citation omitted)).

Instantly, Appellant does not cite any authority to support his argument that a settlement check must be made out to both the plaintiff and his counsel. Further, in response to Appellees' motion to enforce settlement, Appellant acknowledged that it is a matter of "practice" for a check to be made payable to the plaintiff and counsel, rather than something that is mandated by case law, statute, or rule of court. *See* Resp. to Mot. to Enforce Settlement, 12/6/18, at ¶ 4.

Regarding the two blank lines on the release for witness signatures, the release did not contain language mandating that witnesses be present for the execution of the document. Rather, the "certificate of witnesses" section of

- 6 -

the release merely states, "We certify that this release was signed in our presence by the above who acknowledged that he/they understood it fully." Mot. to Enforce Settlement, 11/15/18, at Ex. A. Additionally, despite the blank lines for the witness signatures, the release includes a notary's signature and seal, confirming that Appellant "personally appeared" and executed the release in the notary's presence. *Id.*

Significantly, the defects alleged by Appellant do not establish that he was somehow unaware of the material terms of the settlement agreement or that the parties did not come to a meeting of the minds for all material terms. *See Mazzella*, 739 A.2d at 536. Appellant's reliance on *Shovel Transfer & Storage* also merits no relief, as that case addressed the necessity of the signatures of a party to the contract as opposed to a witness. *See Shovel Transfer & Storage*, 739 A.2d at 137 (acknowledging that "[w]here the written agreement contains the names of certain persons as parties, and one or more do not sign while others do, the question of whether those who sign are bound is to be determined by the intention and understanding of the parties" (citation omitted)); *see also Leyda v. Norelli*, 564 A.2d 244, 245 (Pa. Super. 1989) (holding that that the failure to notarize a release, which expressly provided that a notary public explain the "nature and legal effect" of the document, did not invalidate the release; the parties seeking damages signed the release, the signatures were viewed by a single witness, and the release affirmed that the signatories "carefully read the foregoing release and know the contents thereof, and we sign the same as of our own free acts").

Therefore, the trial court properly determined that the parties agreed upon the essential terms, and the settlement agreement was enforceable. *See Step Plan Servs.*, 12 A.3d at 408. Accordingly, Appellant's first two issues fail.

In his third and fourth issues, Appellant contends that he rescinded his acceptance of the release when he "notified Appellee[s] **one day** after signing an incomplete release." Appellant's Brief at 19 (emphasis in original). Appellant insists that "[t]here was either a mutual assent to rescind . . . or a unilateral rescission" where Appellees' insurance company stopped payment on the settlement check. *Id.* at 20. Moreover, Appellant claims that "Appellee[s] clearly assented to this rescission [due to] the fact that [they] did not file a motion to enforce settlement for nearly two years." *Id.* at 15.

Appellant also suggests that, "[a]t the very least, the validity of the release should be subject to an evidentiary hearing." *Id.* at 22. Appellant emphasizes "that an evidentiary hearing into the existence and binding effect of the settlement agreement is the appropriate procedure to be followed in matters of contested settlement agreements." *Id.* at 17 (citing *Limmer v. Country Belle Co-op Farmers*, 286 A.2d 669 (Pa. Super. 1971)). Appellant maintains that the validity of the settlement agreement remains contested in this case, where the parties dispute the effectiveness of Appellant's purported rescission. *Id.* Moreover, Appellant contends that the trial court "drew conclusions which were not warranted by the uncontested facts, *i.e.*, fraud or the absence thereof." *Id.* at 19.

Appellant concludes that the parties effectively rescinded the release, and the trial court erred in granting Appellees' motion to enforce the settlement agreement. *Id.* at 26. In the alternative, Appellant requests that this Court remand the matter for an evidentiary hearing regarding the propriety of the settlement agreement. *Id.*

"Rescission, an equitable remedy, involves a disaffirmance of the contract and a restoration of the *status quo*." **Umbelina v. Adams**, 34 A.3d 151, 157 (Pa. Super. 2011) (citation omitted). "Contract rescission is permitted only in limited circumstances. First, a contract can be repudiated by mutual agreement of all parties to it." **In re Bridgeport Fire Litig.**, 8 A.3d 1270, 1282 (Pa. Super. 2010) (citation omitted); **see also In re Roberts' Estate**, 112 A.2d 394, 396 (Pa. 1955) (explaining that "[o]ne party to a contract cannot force rescission on the other parties thereto, and the mere failure to object to repudiation . . . is not a manifestation of assent" (citation omitted)).

"A contract can also be avoided if it was procured by fraud or misrepresentation that has been relied upon by the party seeking to rescind the instrument." **Bridgeport Fire Litig.**, 8 A.3d at 1282 (citation omitted); **see also Umbelina**, 34 A.3d at 158 (stating that "the only grounds upon which equity will permit rescission of an executed contract are fraud, mistake, failure of consideration, and *quia timet*" (citations omitted)). "Our courts have ruled that executed contracts cannot be rescinded or annulled in the absence of a showing [of] fraud or mistake simply because a party found the contract

to be burdensome or a financial failure." **Umbelina**, 34 A.3d at 160 (citation omitted).

Regarding the need for an evidentiary hearing on a motion to enforce a settlement agreement, this Court has stated:

> Where the pleading raises an issue of fact relative to a purported settlement, the trial court must conduct an evidentiary hearing; and where the court fails to do so, its failure is not waived by a party's failure to object. The court may be required to determine if an offer to settle was tendered, if it was accepted, if counsel had authority to act, the terms of the settlement and possibly other matters.

**Christian v. Allstate Ins. Co.**, 502 A.2d 192, 194 (Pa. Super. 1985). "We decline to impose such an obligation upon the trial court, however, if it is not apparent from the record that the court was informed of the existence of disputed issues concerning the settlement." **City of Carbondale v. Pa. Ins. Guar. Ass'n**, 636 A.2d 669, 671 (Pa. Super. 1994).

Instantly, Appellees' motion to enforce settlement described the events following Appellant's execution of the release as follows:

> 6.     [Appellant's prior counsel] advised [Appellees' insurance company] over the telephone on December 10, 2016 that **[Appellant] was not happy with the settlement agreement and wanted to rescind the offer** and void the signed release.
>
> 7.     [Appellees' insurance company] stopped payment on the check and the check for $12,855.00 was never cashed.

Mot. to Enforce Settlement at ¶¶ 5-7 (emphasis added). Importantly, Appellant admitted these averments were true in his response to Appellees' motion. **See** Resp. to Mot. to Enforce Settlement at ¶¶ 6-7. The trial court

subsequently reviewed the parties' filings and concluded that "Appellant cannot claim the release and settlement agreement are defective because he is now unhappy with the terms he bound himself to." Trial Ct. Op. at 3.

Here, Appellant has failed to demonstrate that Appellees mutually assented to the rescission merely because they waited two years to file the motion to enforce settlement. **See Roberts' Estate**, 112 A.2d at 396. To the extent Appellant relies on the insurance company's decision to stop payment on the settlement check, we emphasize that the insurance company was not a party to the case, and the record does not support the conclusion that Appellees themselves actually assented to rescission. **See Bridgeport Fire Litig.**, 8 A.3d at 1282. Further, Appellant does not argue that some type of fraud or misrepresentation existed to support his unilateral rescission.[2] **Id.**

On this record, Appellant cannot rescind the executed release simply because he changed his mind about the desirability of the terms of the settlement agreement. **See Umbelina**, 34 A.3d at 160. Further, the trial court did not err in refusing to conduct an evidentiary hearing where the record does not demonstrate any dispute about the existence of an agreement. **See City of Carbondale**, 636 A.2d at 671. Therefore, Appellant is not entitled to relief on his third and fourth issues.

_____

[2] Rather than asserting fraud or misrepresentation, Appellant claimed that he "did not understand that the settlement would not cover all of his losses because he had not recovered from his personal injuries and had outstanding bills" when he signed the release. **See** Resp. to Mot. to Enforce Settlement at ¶ 10.

In his fifth issue, Appellant cites Rule 1030 for the proposition that the affirmative defense of "release" must be pled in a responsive pleading under the heading "new matter." Appellant's Brief at 21. Appellant baldly asserts that Appellees "failed to plead the affirmative defense of 'release' pursuant to [Rule] 1030," and the trial court erred in determining that Appellees did not need to comply with Rule 1030. *Id.* at 20.

Rule 1030 provides, in pertinent part, as follows:

> Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of . . . release . . . shall be pleaded in a responsive pleading under the heading "New Matter". A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

Pa.R.C.P. 1030(a). "Under the Rule, if release is not pled as new matter, the right to assert the defense has been waived. Nevertheless, our Rules of Civil Procedure must be liberally construed so that actions are resolved in a just, speedy and inexpensive manner consistent with [Pa.R.C.P.] 126." *Blumenstock v. Gibson*, 811 A.2d 1029, 1039 (Pa. Super. 2002) (citations omitted).

Instantly, the trial court correctly noted that Rule 1030 applies to responsive pleadings. *See* Trial Ct. Op. at 4; *see also* Pa.R.C.P. 1017 (listing the pleadings that parties may file in a civil action). Appellees, however, did not file a responsive pleading to Appellant's complaint. Rather, Appellees filed a motion to enforce settlement. *See Camp Horne Self Storage LLC v. Lawyers Title Ins. Corp.*, 150 A.3d 999, 1002 (Pa. Super. 2016) (stating

that Pa.R.C.P. "229.1 confers authority on trial courts to, among other things, enforce settlement agreements so long as the underlying cause of action has not been discontinued"); *see also* Pa.R.C.P. 208.1 (explaining that, generally, a motion is "any application to the court for an order made in any civil action or proceeding").

Here, the trial court had authority to address the motion to enforce settlement, as the underlying cause of action was active when Appellees filed their motion. *See Camp Horne Self Storage*, 150 A.3d at 1002. Moreover, Appellant did not lack notice about the release, which he admitted to signing. *See* Resp. to Mot. to Enforce Settlement at ¶ 5. Therefore, to the extent Rule 1030 may be applicable, Appellant's rights were not prejudiced by Appellees' failure to plead the defense of release prior to filing the motion to enforce settlement. *See Blumenstock*, 811 A.2d at 1039 (holding that the trial court need not strictly enforce Rule 1030 where the rights of the plaintiff are not prejudiced). Accordingly, Appellant is not entitled to relief on his fifth issue.

In his sixth issue, Appellant claims that the trial court erred in not finding that Appellees' insurance carrier failed in its obligation of fair dealing with Appellant. Appellant's entire argument on this issue consists of the following sentence: "Furthermore, [Appellees' insurance carrier] is under an obligation of fair dealing to [Appellant] pursuant to the insurance statutes of Pennsylvania." Appellant's Brief at 25-26. Absent additional argument or any citations to relevant authority, Appellant's underdeveloped claim is waived. *See Umbelina*, 34 A.3d at 161 (explaining that "[w]here an appellate brief

fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived" (citations omitted)).  Accordingly, we affirm the order granting Appellees' motion to enforce settlement agreement.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/4/19